Alben JUMP, alias Johnny Jump,
Appellant,

v.

COMMONWEALTH of Kentucky, Appellee.

Court of Appeals of Kentucky.

June 27, 1969.

As Modified on Denial of Rehearing
Oct. 3, 1969.

Wesley Bowen, Newport, Howell W. Vincent, Covington, for appellant.

John Breckinridge, Atty. Gen., James H. Barr, Asst. Atty. Gen., Frankfort, for appellee.

CULLEN, Commissioner.

█ Alben Jump, alias Johnny Jump, was tried on a charge of murder, and a charge of being an habitual criminal by reason of two previous felony convictions. On the murder charge the jury found Jump guilty of voluntary manslaughter and fixed a punishment of 10 years' confinement in the penitentiary. On the habitual criminal charge the jury made no finding. Judgment was entered imposing the 10-year sentence. Jump has appealed, asserting as his primary contention that the evidence was not sufficient to sustain the conviction.

Jump was a bartender in Goldie's Cafe in Dayton, Kentucky. Dewey Sparks caused a disturbance in the cafe and was ejected by the manager. Shortly thereafter he returned with his brother, Earl, and voiced his intention to "tear this place up." The manager undertook to quiet them down

and to reason with them. In a few moments Earl was shot and killed by Jump. There is a conflict in the evidence as to the direct circumstances of the shooting.

Dewey testified that Earl was talking with the manager about 10 feet from the bar; that he (Dewey) noticed that Jump, standing behind the bar, had a gun, and Dewey told Earl of that fact. Earl turned half around to face Jump and Jump then shot him. This testimony as to Earl's position at the time of the shooting was corroborated in some measure by evidence that Earl fell dead some 12 feet from the bar. Jump's testimony was that Dewey was talking with the manager; Earl came *behind the bar,* with his hand near his rear pocket, and said to Jump, "I am going to cut you in two;" Jump then grabbed the gun and shot Earl who was only three or four feet away. While there was testimony of other witnesses corroborating Jump's testimony that Earl had gone behind the bar before the shooting, or at least had gone toward the bar, no other witness heard any threat by Earl to cut Jump. No knife or other weapon was found on Earl's body. The evidence for the defense was not of such force as to render Dewey's testimony incredible.

If Dewey's version of the circumstances of the shooting be accepted as true (which the jury was entitled to do), Jump was in no apparent danger; Dewey and Earl had shown no animosity toward Jump; they were engaged in a discussion with the manager and had taken no overt action to "tear the place up;" while they may have given indications of an intent to cause trouble they had not made any move toward imposing physical harm on anyone; Jump's resort to use of the gun was wholly uncalled for by the circumstances. This apparently was the jury's belief, which belief, and the conviction based upon it, were warranted by the evidence.

■ Jump's second contention on appeal is that his constitutional rights were violated by his being tried on the habitual criminal charge contemporaneously with the trial on the primary charge (murder). This contention has frequently been made to this court and has consistently been rejected. The latest rejection was in Hardin v. Commonwealth, Ky., 428 S.W.2d 224. The court adheres to that ruling.

■ A third contention is that the Commonwealth's attorney was guilty of prejudicially erroneous conduct in his closing argument, in stating that some of the witnesses for the defense were friends of Jump, "naturally * * * are going to be friendly to * * * Jump," and "in their testimony * * * may try to slant their testimony towards Johnny." The court admonished the jury to disregard the word "slant" but overruled a motion for a mistrial. We do not find the argument to be improper. It was a reasonable comment on the interest of the witnesses as affecting their credibility. See 53 Am.Jur., Trial, sec. 464, p. 370.

■ Jump next contends that the trial court erred in overruling his objection to the qualifications of certain prospective jurors. He was being tried in Division No. 2 of the Campbell Circuit Court. During the process of selecting a jury the regular panel for Division No. 2 was exhausted. The court then called members of the panel for Division No. 1. This was on September 17, 1968. Jump objected to the use of the panel from Division No. 1 on the ground that they had been "called to service" on August 16 and could not legally serve more than 30 days.

Jump does not call to our attention any statute or rule limiting service of jurors in courts of continuous session to a period of 30 days after being summoned, nor do we find any such statute or rule. It is true that KRS 29.175 gives some indication of the thought that jurors in courts of continuous session are to be summoned for *calendar* months, but even this is not clear. Even assuming that service is intended to be limited to the calendar month for which the jurors are summoned, we would be unwilling to say that the mere statement by

Jump's counsel, in his objection to the jurors, that they were "called to service" on August 16 meant that they were summoned to serve for the month of August, as distinguished from merely being *selected* on the August date. Upon the record before us we do not find any error in the use of the jurors from Division No. 1.

As a final contention, Jump maintains that the trial court violated RCr 9.74 in answering a question asked by the foreman of the jury, out of the presence of the rest of the jury, after the jury had retired for deliberation. A sufficient answer is that it appears from the record that although the foreman was permitted to ask a question of the court out of the hearing of the rest of the jury, the entire jury was present in open court when the question was asked, and the court restated the question and answered it within the hearing of the entire jury.

The judgment is affirmed.

All concur except PALMORE, J., who dissents as in Hardin v. Commonwealth, Ky., 428 S.W.2d 224.